UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LANGSDEN M. WARD,

       Plaintiff,

   -v-           16-CV-6533 (KMK)

SUPERINTENDENT MICHAEL CAPRA;  OPINION & ORDER
DOCTOR RICHARD MACGILL,

       Defendants.

Appearances:

Langsden M. Ward
Ossining, NY
*Pro se Plainitff*

Bruce J. Turkle, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant Michael Capra*

KENNETH M. KARAS, United States District Judge:

  Pro se Plaintiff Langsden Ward ("Plaintiff"), currently incarcerated at Sing Sing Correctional Facility, brings this Action under 42 U.S.C. § 1983, against Michael Capra ("Capra"), Superintendent at Sing Sing Correctional Facility, and Dr. Richard Magill ("Dr. Magill") alleging violation of his Eighth Amendment rights for deliberate indifference to his serious medical needs. (*See* Am. Compl. (Dkt. No. 8).)[1] Before the Court is Defendant Capra's Motion To Dismiss the Amended Complaint (the "Motion") pursuant to Federal Rule of Civil

---

[1] Plaintiff incorrectly spells Dr. Magill's name "MacGill." (*See* Mot., Ex. A ("Def.'s Mem.") 1 n.1 (Dkt. No. 28).) The Clerk of the Court is instructed to correct the caption.

Procedure 12(b)(6). (See Def.'s Mot. To Dismiss Pursuant to Rule 12(b)(6) ("Mot.") (Dkt. No. 28).)[2] For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from the Amended Complaint and are accepted as true for the purposes of this Motion. At the time of the events described herein, Plaintiff was an inmate at Sing Sing Correctional Facility in Ossining, New York. (*See* Am. Compl. at 2.)[3]

On May 8, 2014, Plaintiff broke his right index finger in four places playing basketball in the gym at Sing Sing. (*See id.* at 4.) Plaintiff's right index finger was examined by the facility nurse practitioner, Nurse Monroe, who recommended that Plaintiff be taken to Mount Vernon Hospital. (*See id.*) Plaintiff was placed in a hard cast "on the right index finger all the way up to his forearm, for extra support." (*Id.*) On May 18, 2014, Dr. Magill operated on Plaintiff's finger and placed two pins in the side of his finger. (*See id.*)

On July 17, 2014, during an emergency medical visit at Sing Sing, Nurse Monroe noticed that the pins were "protruding" from Plaintiff's skin. (*Id.*) "Plaintiff's right index finger was showing signs of inf[]ection, discoloration, hardness, stiffness, lack of mobility, limited flexibility, and pusyness [sic]," which Plaintiff alleges was "d[ue] to [Dr. Magill] leaving pins inside [P]laintiff's right index finger to[o] long[] and surgical err[or]." (*Id.*)

---

[2] Dr. Magill was not served the Complaint or the Amended Complaint. (Def.'s Mem. 1 n.1.) The Court issued an Order of Service on January 18, 2018. (Dkt. No. 37.)

[3] The Amended Complaint consists of multiples copies of the same form as well as pages inserted after the form, with different numbering schemes on each sheet of paper. The Court refers to pages in sequential order in accordance with the computerized page numbers that appear on the top of each page as printed via ECF.

2

After "many visits to [both] the facility and outside doctor," it was determined that the "fibrous membranes" and "tendons" of Plaintiff's finger were damaged, (*id.* at 4–5), and Plaintiff needed a second surgery, (*id.* at 6). Dr. Magill performed a second surgery on Plaintiff's finger on July 13, 2016, "ending in the same result." (*Id.*) Plaintiff suggests that Dr. Magill committed error during the second surgery. (*See id.*) Plaintiff was also treated with physical therapy, pain medication, and an "antibiotic, which cleared Plaintiff's infection." (*Id.*)

Plaintiff alleges that Capra "play[ed] a major role in [P]laintiff's suffering" because Plaintiff was in the care, custody, and control of Capra. (*Id.*) Plaintiff appears to make some allegations against Capra related to both the initial treatment by Dr. Magill and the subsequent surgical complications. First, Plaintiff alleges he was "forcefully referred" to Dr. Magill by Capra. (*Id.*) Second, Plaintiff argues Capra was "[d]eliberately-[i]ndifferent" to Plaintiff's Eighth Amendment rights for failing to address Plaintiff's grievance about his medical treatment, and that Capra's conduct exposed Plaintiff to an "unreasonable risk of future harm." (Pl.'s Answer to Motion To Dismiss ("Pl.'s Answer") 1–2 (Dkt. No. 29); Pl.'s Second Answer to Mot. To Dismiss ("Pl.'s Second Answer") 2 (Dkt. No. 36).) Plaintiff argues "Capra was fully aware" of Plaintiff's "obvious medical situation" because Plaintiff filed a grievance on July 7, 2014 and directly appealed to Capra, as Superintendent, on July 17, 2014. (Pl.'s Answer 1.)[4] Capra "failed to remedy [the] wrong after being informed through [Plaintiff's] grievance," and appeal, (*id.*), and "chose to ignor[e] obvious medical issues that even a lay person would reco[g]nize the seriousness of," (Pl.'s Second Answer 2). Plaintiff "showed significant signs of serious symptoms," (*id.*), yet Capra failed to act on Plaintiff's information indicating that

---

[4] Plaintiff includes grievance documents dated December 29, 2014, directing Plaintiff to contact Capra about his medical grievance. (*See* Am. Compl. 31).

3

unconstitutional acts were occurring under his care, (Pl.'s Answer 2; Pl.'s Second Answer 2–3). After many complaints, Capra's "referral forced [P]laintiff to go to [Dr. Magill] against [P]laintiff's will, grievances, and complaints." (*See* Am. Compl. 6.) As Superintendent, it was "incumbent" upon Capra "to ensure the safety, care, custody, and control, as[ ]well as the protection of all inmates['] constitutional rights." (Pl.'s Answer 2; *see also* Pl.'s Second Answer 1.) Thus, Capra "absolutely disregarded the excessive risk,[ ]harm and extremely painful inflictions caused by" Dr. Magill's surgical errors, and had "a [c]ulpable [s]tate of [m]ind equivalent to the standard[] of recklessness as used in criminal [l]aw." (Pl.'s Answer 1.)

Plaintiff seeks $1.3 million in damages for permanent damage to his right index finger. (*See* Am. Compl. 5.) Plaintiff's injury "now effects his daily activities and significantly changed [P]laintiff's quality of life." (Pl.'s Second Answer 2.) Capra's "actions and conduct imposed a life-long handicap" and permanent damage to Plaintiff's right index finger. (*Id.* at 3.) More specifically, Plaintiff continues to suffer "lack of flex[i]bility, limited mobility, distortion and permanent shortening of plaintiff's right index finger[, ]and finger muscle, joint and scar[]tissue." (Am. Compl. 5–6.) "Plaintiff's medical treatment consisted of physical therapy, which did not work, and medication, . . . which cleared [P]laintiff's infection." (*Id.* at 6.)

B.  Procedural History

On August 18, 2016, Plaintiff filed the initial Complaint. (Compl. (Dkt. No. 2).) That same day, Plaintiff requested to proceed in forma pauperis ("IFP"). (Request to Proceed IFP (Dkt. No. 1).) The Court granted Plaintiff's request for IFP status on September 30, 2016. (Order Granting IFP Application (Dkt. No. 6).) On October 27, 2016, Chief Judge McMahon ordered Plaintiff to file an Amended Complaint to detail his claims. (Order to Amend (Dkt. No. 7).) On December 7, 2016, Plaintiff filed an Amended Complaint. (Am. Compl.)

Plaintiff's IFP status entitled him to service upon the Defendants, and on December 19, 2016, the Court issued an Order of Service, instructing the U.S. Marshals Service to effect service on Capra and the New York State Attorney General to ascertain the address where Dr. Magill may be served. (Order (Dkt. No. 10).) Through no fault of Plaintiff's, Dr. Magill was not served. (Mot., Ex. A ("Def.'s Mem.") 1 n.1 (Dkt. No. 28).) The Court issued an Order of Service for Dr. Magill on January 18, 2018. (Order (Dkt. No. 37).) Plaintiff also filed an application for the Court to request pro bono counsel on April 4, 2017, (*see* Application To Request Appointment of Counsel (Dkt. No. 24)), which the Court denied without prejudice on April 17, 2017, (*see* Order (Dkt. No. 27)).

On March 16, 2016, Capra requested a premotion conference to file the present Motion. (Dkt. No. 20.) Pursuant to a memo endorsement, the Court adopted a briefing schedule on March 31, 2017. (Dkt. No. 23.)[5] On May 1, 2017, Capra filed the Motion and accompanying memorandum of law. (Mot.; Def.'s Mem.) On June 7, 2017, the Court received Plaintiff's Answer to the Motion. (Pl.'s Answer.)[6] On June 15, 2017, Capra filed a Reply. (Def.'s Reply Mem. Of Law ("Def.'s Reply Mem.") (Dkt. No 33).) On July 17, 2017, the Court received Plaintiff's Second Answer to the Motion. (Pl.'s Second Answer.)[7]

---

[5] In a letter dated April 3, 2017, but docketed on ECF April 11, 2017, Plaintiff requested an "extension to" Capra's Motion. (Dkt. No. 25.) The Court denied the request as premature, because the Motion and the Response were not yet due. (Dkt. No. 26.)

[6] In a letter dated May 29, 2017, but docketed on ECF June 8, 2017, Plaintiff requested an extension of time to oppose the Motion. (Dkt. No. 30.) However, Plaintiff timely served the opposition papers, and the Court deemed the extension unnecessary. (Dkt. No. 32.)

[7] In a letter dated July 13, 2017, Capra requested that the Court disregard Plaintiff's second opposition to Capra's Motion. (Dkt. No. 34.) Pursuant to a memo endorsement, the Court informed Capra that the Court would consider the submission. (Dkt. No. 35.) Indeed, "because [Plaintiff] is proceeding pro se, the Court [can] consider factual allegations contained in [his] two submissions in opposition to [D]efendant[']s motion to dismiss, to the extent consistent

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation

---

with the [Amended] Complaint." *Rosario v. City of New York*, No. 12-CV-4795, 2013 WL 2099254, at *1–2 n.1 (S.D.N.Y. May 15, 2013).

6

omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

Capra moves to dismiss the claims against him on three grounds: (1) Plaintiff failed to allege Capra's personal involvement in any constitutional violation; (2) Capra was not deliberately indifferent to Plaintiff's medical needs; (3) and Capra is entitled to qualified immunity. The Court addresses each in turn.

1. Personal Involvement

Capra argues that the Amended Complaint should be dismissed against him because he was not personally involved in the alleged Eighth Amendment violations. (Def.'s Mem. 3–4.) Plaintiff claims that Capra was personally involved because he referred Plaintiff to Dr. Magill, "failed to remedy a wrong," and "failed to act on information indicating that unconstitutional acts were occurring." (Pl.'s Second Answer 2; Pl.'s Answer 2.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege conduct by

8

Capra that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has failed to plausibly allege Capra's personal involvement in the alleged constitutional deprivations. The gravamen of the claims against Capra are that he referred Plaintiff to Dr. Magill and that he failed to address Plaintiff's medical situation despite Plaintiff's grievance and Capra's position of authority in the prison system. However, the Amended Complaint contains no allegations whatsoever that Capra was involved in decisions regarding what medical care Plaintiff received, or that he was aware of or somehow permitted McGill to provide allegedly inadequate medical care to Plaintiff. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (explaining that direct participation involves "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal").

Even if Capra was generally responsible for the supervision of Dr. Magill, something Plaintiff does not allege, the Amended Complaint makes no claims Capra was "grossly negligent" in his supervision. *Grullon*, 720 F.3d at 139. Moreover, Capra cannot be held personally liable for constitutional violations merely "because he was in a high position of authority" at Sing Sing. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (affirming summary judgment in favor of the Commissioner of the New York Department of Correctional Services); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (explaining that "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority" (internal quotation

9

marks omitted)). "Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted). Personal involvement requires "a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (same).

Moreover, contrary to Plaintiff's suggestions, filing an appeal of his denied grievance with Capra in his role as Superintendent does not establish Capra "failed to remedy a wrong" or "failed to act on information indicating that unconstitutional acts were occurring." (Pl.'s Second Answer 2.) "[I]t is well settled that mere receipt of a grievance or misbehavior report does not establish liability under § 1983." *Lebron*, 2017 WL 365493, at *6; *see also Whitenack v. Armor Med.*, No. 13-CV-2071, 2014 WL 5502300, at *6 (E.D.N.Y. Oct. 30, 2014) ("Since [the] plaintiff has pled no facts, beyond [the sheriff's] presumed receipt of grievances and his position atop the [correctional center] . . . , [the plaintiff] has failed to plausibly plead [the sheriff's] personal involvement in any infringement of [the plaintiff's] constitutional rights." (alterations and internal quotation marks omitted)); *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("[M]ere receipt of [the plaintiff's] grievance, and [the defendant's] subsequent inaction, are insufficient to establish . . . personal involvement."). Plaintiff does not allege that Capra knew of, replied to, or was personally involved with the investigation of his grievance. Plaintiff cannot merely assert that Capra was apprised of these alleged violations due to the grievance process. "This presumed knowledge, without more, is . . . insufficient to establish personal involvement." *Burgess v. Wright*, No. 08-CV-725, 2009 WL 2971538, at *6 (N.D.N.Y. Sept. 11, 2009); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (concluding that the defendant's receipt of a letter from a plaintiff generally complaining about the conditions of

confinement was insufficient to put defendant "on actual or constructive notice of the violation"). Plaintiff has not plausibly alleged that Capra "failed to remedy [a] wrong" or "exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring. *Grullon*, 720 F.3d at 139 (listing personal involvement categories).

The Court therefore grants Capra's Motion To Dismiss for lack of personal involvement.

2. Eighth Amendment Violation

Capra argues that even if Plaintiff has alleged Capra's personal involvement, Plaintiff has failed to state a claim under the Eighth Amendment based on deliberate indifference because Plaintiff's injury was insufficiently serious to establish a violation of the Eighth Amendment and, in the alternative, Plaintiff has failed to show that the Capra acted with the requisite intent. (Def.'s Mem. 4–8.) Plaintiff alleges that Capra "acted with '[d]eliberate [i]ndifference'" to Plaintiff's "serious medical needs." (Pl.'s Second Answer 3; Pl.'s Answer 3.)

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed." *Rush v. Artuz*, No. 00-CV-3436, 2004 WL 1770064, at *8 (S.D.N.Y. Aug. 6, 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)). "The standard of deliberate

11

indifference includes both subjective and objective components." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). To establish such a claim, Plaintiff must plausibly allege both (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the Defendant "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *10 (S.D.N.Y. Mar. 30, 2017).

The first requirement is objective: "the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *Id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment;' (2) whether the medical condition significantly affects daily activities; and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Change*, 143 F.3d at 702).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This requires that the prison official

12

involved act with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). This is satisfied by a showing that the official acted with "deliberate indifference" toward Plaintiff's health, a state of mind akin to criminal recklessness. *Id.* "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* at 280.

First, to the extent Plaintiff was referred to Dr. Magill by Capra for the broken finger, Capra's conduct does not satisfy the objective requirement. Plaintiff does not articulate how Capra referring Plaintiff to Dr. Magill for treatment "actually deprived [Plaintiff] of adequate medical care." *Id.* at 279. Assuming, *arguendo,* that referring Plaintiff to Dr. Magill to care for his broken finger constituted inadequate medical care, Plaintiff's injury was not sufficiently serious. "Courts in this Circuit have held a broken finger does not constitute a serious enough injury to satisfy the objective prong of the deliberate indifference test." *Laguna v. Kwan*, No. 13-CV-7079, 2015 WL 872366, at *4 (S.D.N.Y. Jan. 28, 2015); *see also Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *4 (S.D.N.Y. Feb. 11, 2015) ("[A] broken finger, along with . . . swelling, decreased range of motion and serious pain . . . cannot support a failure-to-treat deliberate indifference claim."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("Case law holds that the objective prong of the deliberate indifference test is not satisfied . . . whe[n] a finger is broken."); *Henderson v. Doe,* No. 98-CV-5011, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (holding "conditions that have failed to meet [the sufficiently serious] standard include . . . a broken finger"); *Rivera v. S.B. Johnson,* No. 95-CV-845, 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection.").

Regarding the complications following Plaintiff's surgery, Plaintiff has not alleged he "was actually deprived of adequate medical care" in response to those complications. *Salahuddin*, 467 F.3d at 279. By his own admissions, his condition was not ignored: Plaintiff saw a nurse, had "many visits to the facility and outside doctor," (Am. Compl. 4), received a second surgery, received physical therapy, and was given antibiotics, which cleared the infection, as well as pain medication, (*see id*.). Thus, to the extent Plaintiff has attempted to plead that Capra's failure to respond to his grievance seeking care deprived him of adequate medical care, that claim is belied by the record and fails.

Plaintiff's claim also fails the subjective prong of the test. Plaintiff offers only conclusory allegations that Capra was "[d]eliberately [i]ndifferent," "was fully aware" of Plaintiff's condition due to the grievance, "disregarded the excessive risk[, ]harm and extremely painful[] inflictions," and had "a [c]ulpable [s]tate of [m]ind equivalent to the standards of recklessness." (Pl.'s Answer 1; *see also* Pl.'s Second Answer 3). This is not sufficient to allege Capra specifically knew of Plaintiff's condition and disregarded a significant risk to Plaintiff's safety. *See Twombly*, 550 U.S. at 555 (holding that a "formulaic recitation of the elements of a cause of action will not do"); *Evans v. Albany Cty. Corr. Facility,* No. 05-CV-1400, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009) (noting that "a showing of deliberate indifference requires more than just vague and conclusory allegations" (internal quotation marks omitted)). Rather, to satisfy this standard, Capra "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff filling out a grievance and appeal regarding the health care he was being provided does not satisfy that standard. Even if Capra

14

had knowledge of the grievance, "a prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been 'personally involved' if he does so." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002); *see also Libbett v. Doody*, 686 F. Supp. 2d 271, 278–79 (W.D.N.Y. 2010) (Where the defendants "knew that [the plaintiff] was under the care of [the doctor], it would hardly be reasonable to expect them to question his judgment or to credit the plaintiff's contention that [the doctor's] course of treatment was somehow deficient."). Thus, Plaintiff has failed to allege that Capra "act[ed] with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. Therefore, this claim is dismissed.[8]

### III. Conclusion

For the foregoing reasons, Defendant Capra's Motion To Dismiss is granted as to the deliberate indifference claims against him. However, because this is the first adjudication of Plaintiff's claims against Capra on the merits, the dismissal is without prejudice. Should Plaintiff choose to file an amended complaint correcting the deficiencies identified above, he must do so within 30 days of the date of this Opinion & Order. The new amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, the claim against Capra could be dismissed with prejudice.

---

[8] Because the Court grants the Motion To Dismiss on the grounds that Plaintiff failed to state a claim under the Eighth Amendment, the Court need not reach Capra's alternate argument that he is entitled to qualified immunity, (*see* Def.'s Mem. 7–10), or the argument raised in Capra's reply that Plaintiff failed to exhaust his administrative remedies, (*see* Def.'s Reply Mem. 3).

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and terminate the pending motion. (Dkt. No. 28.)

SO ORDERED.

Dated: March 29, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE