UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LANGSDEN M. WARD,

                    Plaintiff,

           v.

SUPERINTENDENT MICHAEL CAPRA and
DR. RICHARD MAGILL,

                    Defendants.

No. 16-CV-6533 (KMK)

OPINION & ORDER

Appearances:

Langsden M. Ward
Stormville, NY
*Pro Se Plaintiff*

Barbara K. Hathaway, Esq.
Bruce J. Turkle, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Langsden M. Ward ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Michael Capra ("Capra"), Superintendent at Sing Sing Correctional Facility ("Sing Sing"), and Dr. Richard Magill ("Dr. Magill") (collectively, "Defendants"), alleging violation of his Eighth Amendment rights for deliberate indifference to his serious medical needs while incarcerated at Sing Sing. On March 13, 2018, the Court issued an Opinion & Order granting an earlier motion to dismiss filed by Defendant Capra. (*See* Op. & Order (Dkt. No. 39).) Before the Court is Defendants' Motion To Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 61).) For the reasons set forth herein, the Motion is granted.

## I. Background

### A. Factual History

The following facts are drawn from Plaintiff's Second Amended Complaint, (Second Am. Compl. ("SAC") (Dkt. No. 58)), and the exhibits attached to Plaintiff's opposition to Defendants' Motion, (Aff. in Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 69)), and are taken as true for the purpose of resolving the instant Motion.[1]

On May 8, 2014, Plaintiff broke his right index finger in four places while playing basketball in the gym at Sing Sing. (SAC 4.) Plaintiff's finger was examined by a non-party nurse practitioner, Nurse Monroe, who recommended that Plaintiff be taken to an outside hospital for further treatment. (*Id.*) Plaintiff was admitted to Mount Vernon Hospital and placed in a hard cast. (*Id.*)

On June 18, 2014, Dr. Magill operated on Plaintiff's finger and placed two pins in the left side of his finger. (*Id.*; *see also* Pl.'s Mem. 10, 15 (medical records).) A post-operation follow-up visit was "recommend[ed]" on July 3, 2014. (Pl.'s Mem. 15.)

On July 13, 2014, Plaintiff had an "emergency visit" with Nurse Monroe. (SAC 4.) Monroe noticed that the pins were "protruding through the skin" of Plaintiff's finger. (*Id.*) Plaintiff alleges the finger was showing signs of "inf[]ection, discoloration, deformity, hardness, lack of mobility, lack of flexibility, stiffness, [and] pusyness [sic]." (*Id.*) Plaintiff further alleges the protrusion was caused by a "delay" in his medical treatment of "two weeks" as well as

---

[1] Plaintiff's filings in this case do not use consistent page numbering. The Court thus cites to the ECF-generated page numbers stamped at the top right-hand corner of each page.

"surgical [error]." (*Id.* at 4–5.)

After "many visits to the outside doctor," it was determined that Defendants "not only created [Plaintiff's] medical issues" but "damaged" the "fibrous membranes" and "tendons" of his finger, which caused a "permanent shortening" and "deformity" of the finger joint. (*Id.* at 5.) On July 13, 2018, Dr. Magill performed a second surgery on Plaintiff's finger. (*Id.* at 6.) Plaintiff was further treated with "physical therapy, which did not work," as well as pain medication and antibiotics, "which cleared up [Plaintiff's] inf[]ection." (*Id.*)

B.  Procedural History

Plaintiff filed his initial Complaint on August 18, 2016. (Dkt. No. 2.) The Court granted Plaintiff's IFP request on September 30, 2016. (Dkt. No. 6.) On October 27, 2016, Chief Judge McMahon issued an Order directing Plaintiff to file an Amended Complaint to detail his claims. (Order to Amend (Dkt. No. 7).) On December 7, 2016, Plaintiff filed a First Amended Complaint. (Dkt. No. 8.)

Defendant Capra filed a motion seeking to dismiss the First Amended Complaint on May 1, 2017. (Dkt. No. 28.)[2] Plaintiff filed his opposition on June 7, 2017. (Dkt. No. 29.) On June 15, 2017, Capra filed a reply. (Dkt. No. 33.) Plaintiff filed a second opposition on July 17, 2017. (Dkt. No. 36.) On March 29, 2018, the Court issued its earlier Opinion granting Capra's motion and dismissing the First Amended Complaint in its entirety. (Op & Order 15.) The Court granted Plaintiff 30 days to amend. (*Id.*) Plaintiff thereafter requested an extension, which the Court granted. (Dkt. No. 42.) However, Plaintiff did not file a second amended complaint, and on May 23, 2018, the Court issued an Order directing the Plaintiff to show cause why this

---

[2] At the time Capra filed the motion, Dr. Magill had not yet been served. (*See* Op. & Order 5.) Dr. Magill was served on April 5, 2018, (Dkt. No. 40), following issuance of an Order of Service, (Dkt. No. 37).

3

case should not be dismissed for failure to prosecute. (Dkt. No. 47.) Plaintiff responded to the Order on June 4, 2018. (Dkt. No. 54.) On June 7, 2018, the Court directed that Plaintiff file a second amended complaint by July 6, 2018. (Dkt. No. 53.) After a request for an extension, (Dkt. No. 56), the Court extended Plaintiff's time to file to August 12, 2018, (Dkt. No. 57). On August 29, 2018, Plaintiff filed the instant Second Amended Complaint. (SAC (Dkt. No. 58).)

On September 7, 2018, Defendants — including Dr. Magill — filed a letter seeking a pre-motion conference in anticipation of moving to dismiss. (Dkt. No. 59.) The Court set a briefing schedule. (Dkt. No. 60.) On October 12, 2018, Defendants filed the instant Motion To Dismiss. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 62).) Plaintiff filed his opposition on January 14, 2019. (Pl.'s Mem.) On January 31, 2019, Defendants filed a reply. (Defs.' Reply Mem. of Law ("Defs.' Reply") (Dkt. No. 71).)

## II. Discussion

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that it fails to correct the deficiencies identified in the Court's prior Opinion & Order. (Defs.' Mem. 1.) In particular, Defendants argue that Plaintiff fails to allege the personal involvement of Capra in any constitutional violation, that Plaintiff fails to state an Eighth Amendment claim of deliberate indifference against either Defendant, that in any event Dr. Magill is entitled to qualified immunity, and that Plaintiff has failed to exhaust his administrative remedies. (*Id.* at 4–13.) The Court addresses each argument separately to the extent necessary.

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

4

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

5

of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  Personal Involvement of Capra

Plaintiff alleges that Capra, as Superintendent at Sing Sing, received Plaintiff's grievance detailing his medical problems following his first surgery "but . . . chose to ignore [Plaintiff's] medical situation."  (SAC 6; *see also id.* at 5 (alleging that Capra "ignor[ed]" Plaintiff's "serious medical needs").)  Plaintiff further argues that Capra "failed to act on information indicating that [Plaintiff's] constitutional rights[] and medical needs were being violated."  (Pl.'s Mem. 3.)  Yet, "it is well-established that an allegation that" a supervisory official allegedly "ignored a prisoner's letter of protest . . . is insufficient to hold that officer liable for the alleged violations." *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (alterations and quotation marks omitted) (collecting cases); *see also Dawkins v. Copeland*, No. 17-CV-9926, 2019 WL 1437049, at *8 (S.D.N.Y. Mar. 31, 2019) ("[A] defendant's mere receipt of a grievance is insufficient to show [his] personal involvement in a constitutional deprivation.").  Nor is Capra liable merely because of the supervisory nature of his position, for "mere linkage in the prison chain of command is insufficient to implicate a . . . prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citation and quotation marks omitted); *see also Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (holding personal involvement was not established in complaint alleging that "two high-ranking prison officials[] were grossly negligent in failing to supervise unspecified subordinates who concealed [the plaintiff's] medical condition from him and thus delayed any treatment," because the plaintiff "did not allege . . . any facts concerning [the supervisory officials'] particular conduct in supervising their subordinates" and were instead "premised [solely] on a theory of supervisory liability").  Accordingly, Plaintiff fails to state Capra's personal

7

involvement in the alleged constitutional violation.

### 2. Eighth Amendment

#### a. Applicable Law

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

The first element is "objective" and requires Plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, Plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted). "There is no settled, precise

metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element, which goes to mental state, requires Plaintiff show that the prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* (citation and quotation marks omitted). An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Neither does "mere disagreement over the proper treatment . . . create

a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

### b. Objective Element

As the Court previously concluded, Plaintiff's broken finger alone "does not constitute a serious enough injury to satisfy the objective [element] of the deliberate indifference test." (Op. & Order 13 (collecting cases and quoting *Laguna v. Kwan*, No. 13-CV-7079, 2015 WL 872366, at *4 (S.D.N.Y. Jan. 28, 2015)).) Nor does Plaintiff's post-surgery finger infection — which, Plaintiff alleges, was treated with antibiotics, (*see* SAC 6; Pl.'s Mem. 8) — satisfy the objective element. *See Laguna*, 2015 WL 872366, at *4 (collecting cases for the proposition that "infections do not generally constitute a serious medical need"). The Second Circuit has instructed, however, that "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original). Plaintiff alleges a treatment delay of two weeks, that is, that following his initial surgery, Dr. Magill left the pins in Plaintiff's finger two weeks past the due date for removal, thereby causing infection and pain, necessitating the need for a second surgery, and ultimately causing permanent deformity and stiffness in the finger. (SAC 4–6; Pl.'s Mem. 3–8.) For a delay in treatment to satisfy the objective element, the delay must generally "involve[] either a needlessly prolonged period . . . , or [have] . . . caused extreme pain or exacerbated a serious illness." *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (citations omitted). Here, drawing every reasonable inference in favor of Plaintiff, the Court assumes that a two-week delay in treatment resulting in a pus-filled

10

infection as well as pins protruding from the finger caused Plaintiff "extreme pain" and "exacerbated" an injury sufficient to satisfy the objective element.[3] *See Chance*, 143 F.3d at 702–03 (holding that an infected tooth, which caused the plaintiff severe pain, rendered him unable to chew for several months, and required an extraction, satisfied the objective element); *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) (holding objective element satisfied where the plaintiff alleged a two-year delay in treatment of broken pins in hip and ongoing pain); *cf. Burgess v. Wright*, No. 08-CV-725, 2009 WL 2971538, at *7–8 (N.D.N.Y. Sept. 11, 2009) (holding that a broken finger and a "potential[]" infection did not satisfy the objective element).

### c.  Mental-State Element

Even assuming Plaintiff has satisfied the objective element, however, Plaintiff does not allege facts suggesting that Dr. Magill had a "subjective awareness of the harmfulness associated with" Plaintiff's condition such that it could be said Dr. Magill acted with deliberate indifference. *Darnell*, 849 F.3d at 35. Plaintiff alleges that Dr. Magill left the pins inside his finger two weeks past his due date and thereafter performed a second surgery on the finger. (SAC 4–6; Pl.'s Mem. 3–5, 7–8.)  "[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004) (citation and quotation marks omitted), *aff'd*, 459 F.3d 241 (2d Cir. 2006).  That is, "denying or delaying needed treatment for a serious medical condition constitutes deliberate

---

[3] The Court notes that some cases have found even longer delays in treating a broken finger insufficiently prolonged to satisfy the objective element. *See, e.g.*, *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (ten-week delay); *Aho v. Hughes*, No. 03-CV-1552, 2005 WL 2452573, at *7 (D. Conn. Sept. 30, 2005) (two-month delay). However, these cases involved broken fingers alone and did not involve allegations of infection, protruding pins, and permanent deformity.

11

indifference for Eighth Amendment purposes only if," for example, the "official[] delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days, or delayed major surgery." *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) (citation omitted). Here, Plaintiff alleges no facts plausibly suggesting that Dr. Magill intentionally or knowingly delayed the removal of the pins at all, let alone delayed the removal having learned of the complications arising out of the first surgery. Plaintiff does not allege, for example, that he complained to Dr. Magill directly or that Dr. Magill otherwise became aware of the complications associated with Plaintiff's first surgery and thereafter chose not to promptly act. Indeed, Plaintiff alleges no facts *at all* going to Dr. Magill's mental state or awareness of Plaintiff's condition following his first surgery. There is no allegation, then, that plausibly supports a claim that Dr. Magill "consciously disregarded a substantial risk of serious harm through deliberate delay of treatment." *Pabon*, 2004 WL 628784, at *8; *see also Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462, at *6 (S.D.N.Y. Mar. 21, 2019) (dismissing deliberate indifference claim where the "plaintiff fail[ed] to make any non-conclusory allegations suggesting any defendant acted with deliberate indifference in causing the delay"); *Bennett v. Care Correction Sol. Med. Contracter*, No. 15-CV-3746, 2017 WL 1167325, at *8 (S.D.N.Y. Mar. 24, 2017) (dismissing deliberate indifference claim based on three-month delay in surgery where the plaintiff had "not alleged any conduct or behavior that would suggest the delay was caused by [the defendants'] deliberate indifference"), *appeal dismissed*, 2018 WL 1756123 (2d Cir. 2018); *Myrie*, 615 F. Supp. 2d at 248 (dismissing deliberate indifference claim based on delayed treatment where "[n]o facts [were] pleaded tending to show that [the] defendant . . . took affirmative steps to ensure that [the plaintiff] would not receive his [medical] treatment"); *Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (collecting cases for the

proposition that courts dismiss deliberate indifference claims in which inmates "merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or reckless"); *cf. Hemmings v. Gorczyk*, 134 F.3d 104, 108–09 (2d Cir. 1998) (holding the plaintiff stated a deliberate indifference claim in which the complaint alleged, inter alia, that medical personnel willfully ignored an "easily observable" ruptured Achilles tendon about which the plaintiff "complained about for almost two months before being referred to a specialist"); *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 542 (S.D.N.Y. 2015) (holding the plaintiff stated a deliberate indifference claim where the defendant told him that "the surgery was not going to happen because [the] . . . injuries were not life threatening, and he would therefore have to wait to receive surgery until he was transferred or . . . released"); *Lloyd v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) (denying motion to dismiss where doctors "knew that [the plaintiff] was experiencing extreme pain and loss of mobility," but "[n]ine months went by after [an] MRI was first requested before the MRI was actually taken," resulting in the plaintiff experiencing ongoing pain for over a year). Rather, the allegations contained in the Second Amended Complaint suggest that Dr. Magill acted with "negligence amounting to medical malpractice," which is "insufficient to state a claim of deliberate indifference." *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *8 (S.D.N.Y. Sept. 28, 2018) (citations omitted); *see also Hernandez v. Keane*, 341 F.3d 137, 145–46 (2d Cir. 2003) (holding no Eighth Amendment violation where doctor failed, inter alia, to have pins and wires removed from the plaintiff's broken hand within prescribed time after hand surgery, because the "evidence . . . suggests at most several acts of negligence over a prolonged period"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) (holding that

13

"treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference" (citation and quotation marks omitted)).

Accordingly, Plaintiff fails to state an Eighth Amendment claim against Dr. Magill.[4]

### 3. State Law Claims

To the extent Plaintiff alleges state law claims of negligence and medical malpractice, they are barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Correct. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court). Therefore, "[c]ourts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017). Here, Defendants clearly were DOCCS employees performing their duties at Sing Sing when the alleged constitutional violations occurred. Any state law claims must therefore be dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. The Second Amended Complaint is dismissed in its entirety. Dismissal is with prejudice.[5] The Clerk of the

---

[4] Because the Court concludes that Plaintiff fails to allege Capra's personal involvement and fails to state an Eighth Amendment claim against Dr. Magill, it need not consider Defendants' other arguments that Dr. Magill is entitled to qualified immunity and that Plaintiff has failed to exhaust his administrative remedies. (Defs.' Mem. 9–13.)

[5] Even pro se plaintiffs are not entitled to amend a complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble*

14

Court is respectfully requested to terminate the pending motion, (Dkt. No. 61), to mail a copy of this Opinion to Plaintiff, and to close this case.

SO ORDERED.

DATED: April 30, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

*Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012). Here, Plaintiff "has already had two [previous] bites at the apple, and they have proven fruitless." *Melvin*, 2016 WL 1254394, at *24 n.19 (citation, alterations, and quotation marks omitted); *see also Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where the plaintiff "has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 F. App'x 31 (2d Cir. 2016). The Court finds that further amendment on these claims would be futile.